UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN CLARKE, as Husband and Administrator of the Estate of Tracie Clarke<br><br>Plaintiff,<br><br>v.<br><br>DPWN HOLDINGS (USA), INC.,<br><br>Defendant. | Case No. 20 C 05130<br><br>Judge Martha M. Pacold |

## MEMORANDUM OPINION AND ORDER

Tracie Clarke applied for life insurance benefits under the policy of her employer DPWN Holdings (USA), Inc. ("DHL"). DHL ended her employment shortly afterward, and Clarke passed away. Clarke's husband Bryan Clarke, acting as administrator of her estate (the "Estate"), filed this lawsuit against DHL alleging that DHL wrongfully terminated Clarke and defrauded her to avoid paying her life insurance benefits. DHL moved to dismiss the complaint on the basis that the Estate's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and not administratively exhausted, and the wrongful termination claim fails to state a claim under Illinois law. For the reasons that follow, the motion is granted, the complaint is dismissed without prejudice, and the Estate is granted leave to file an amended complaint.

## BACKGROUND

The following facts are taken from the complaint. Tracie Clarke was an Illinois resident and employee of DHL, a Florida company that provides express delivery services. [1-2] ¶¶ 5–6.[1] Through her employment with DHL, Clarke was covered under a life insurance policy (the "Policy") administered by Hartford Life and Accident Insurance Co. *Id.* ¶¶ 4, 6, 9.

In 2016, due to serious health issues, Clarke applied for a Premium Waiver and then, in 2017, applied for Accelerated Death Benefits under the Policy. *Id.* ¶ 10. Clarke completed all necessary forms and submitted them to Hartford and DHL. *Id.* ¶ 13. In August 2017, Clarke contacted DHL for assistance in having her

---

[1] Bracketed numbers refer to docket entries and are followed by page and / or paragraph number citations. Page numbers refer to the CM/ECF page number.

applications processed and was informed that her employment had to be administratively terminated for her to receive the benefits. *Id.* ¶ 10 & Ex. 1. Clarke "was immediately thereafter terminated by DHL." *Id.* ¶ 10.

In September 2017, Hartford denied Clarke's claim for Accelerated Death Benefits because, under the Policy, "coverage ends on the date [the] Employer terminates [the] employment." *Id.* ¶ 11 & Ex. 2. Clarke passed away on August 18, 2019. *Id.* ¶ 12.

On July 31, 2020, the Estate filed the complaint in Illinois state court against DHL and Hartford "seek[ing] redress for DHL's wrongful termination of Tracie and Defendants' practices in causing Plaintiff to become ineligible for her life insurance benefits through her employment with DHL." *Id.* ¶ 1. The Estate alleges that Clarke "submitted to Hartford and DHL the necessary forms and applications for Benefits under the Policy, however, as a result of misinformation provided by DHL to Tracie and the fact that DHL improperly terminated Tracie, she received no Benefits to which she was entitled." *Id.* ¶ 14. The complaint includes four counts: wrongful termination, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), fraud, and unjust enrichment. *Id.* ¶¶ 16-39. The Estate seeks damages "in the amount of the Benefit and the unpaid interest." *Id.* ¶ 15.

On August 31, 2020, Hartford (with DHL's consent) removed the suit to federal court on the basis of both diversity and federal question jurisdiction. [1]. On October 15, 2020, Hartford filed a motion to dismiss the complaint [13], and, on November 5, 2020, the Estate moved to voluntarily dismiss Hartford [21]. The court granted the Estate's motion and denied Hartford's motion as moot. [22].

On December 4, 2020, DHL moved to dismiss the complaint. [23]. DHL argues that the Estate's claims are preempted by ERISA, the Estate failed to exhaust its administrative remedies before filing suit, and the complaint fails to state a claim under Illinois law for wrongful termination.

## LEGAL STANDARD

When reviewing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiff['s] favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 365–66 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 366 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Federal pleading standards do "not require detailed factual allegations, but [they] demand[] more

2

than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (internal quotation marks omitted). "[N]aked assertion[s] devoid of further factual enhancement" are insufficient. *Id.* (second alteration in original, internal quotation marks omitted).

## DISCUSSION

### I. Preemption

"In enacting ERISA, Congress included two distinct and powerful preemption provisions: complete preemption under ERISA § 502, 29 U.S.C. § 1132, and conflict preemption under ERISA § 514, 29 U.S.C. § 1144." *Halperin v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021). DHL argues that the Estate's complaint is preempted under § 514, which states that (subject to exceptions not relevant here) ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a).

The key inquiry under § 514 is whether the Estate's claims "relate to" an ERISA-regulated plan. "[T]he Supreme Court has written that a law 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan.'" *Halperin*, 7 F.4th at 541 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). This generally encompasses "two categories of state laws": (1) state laws that "act[] immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation," and (2) "state statute[s] or claim[s] that, while not facially tied to ERISA, govern[] . . . a central matter of plan administration or interfere[] with nationally uniform plan administration." *Id.* (ellipsis in original, internal quotation marks omitted). The second category of preempted laws "includes state-law causes of action seeking 'alternative enforcement mechanisms' as an end run around ERISA's more limited remedial scheme." *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995)).

The parties do not dispute that the Policy is an ERISA plan, so the only question is whether the Estate's claims relate to the Policy. The court concludes that they do. The Supreme Court has held "that § 514(a) of ERISA expressly preempts state common laws protecting employees from wrongful discharge when the claim relates to an employee's rights under an ERISA plan." *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 679 (7th Cir. 1997) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990)). Specifically, the Supreme Court held that "a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid . . . paying benefits under" an ERISA plan is "pre-empted" because "the existence of a[n] [ERISA] plan is a critical factor in establishing liability" and would disrupt the uniform ERISA scheme designed by Congress. *Ingersoll-Rand*, 498 U.S. at 140–42. Relying on this precedent, the Seventh Circuit has held that a claim that an employer "violated Illinois law by

3

firing [the plaintiff] for seeking . . . benefits under [ERISA] plans" is "clearly preempted." *Kariotis*, 131 F.3d at 679.

These are precisely the claims brought by the Estate, as each rests on the theory that DHL terminated Tracie Clarke for the purpose of denying her benefits under the Policy. The Estate's fraud claim alleges that DHL "intended to deceive, defraud and/or induce Plaintiff into not objecting to the termination of her employment with DHL in order to deny Tracie's claims and to prevent her from receiving the benefits to which she was entitled by the Policy." [1-2] ¶ 33; *see also id.*, Prayer for Relief ¶ D. Similarly, for its unjust enrichment claims, the Estate alleges that DHL "had knowledge of the insurance coverage to which Tracie was entitled and terminated her employment in order to deny Tracie's claims and retain the Benefits to which she was entitled." *Id.* ¶ 37. And the Estate's wrongful termination and ICFA claims plead that DHL "improperly and wrongfully terminated Tracie and therefore deprived Tracie and/or her Estate of the benefits due to her under the Policy." *Id.* ¶ 17; *id.* ¶ 25 (alleging DHL "engaged in the unlawful and unfair deception, fraud, false pretense, false promise, and/or misrepresentation by improperly terminating Tracie and therefore depriving Tracie and/or her Estate of the benefits due to her under the Policy"). Drawing all reasonable inferences in the Estate's favor, the complaint alleges that DHL fired Tracie Clarke because of her request for benefits under the Policy. *See* [1-2] ¶ 10 & Ex. 1 (alleging Tracie Clarke was "immediately . . . terminated by DHL" after requesting assistance obtaining insurance benefits).

The Estate argues that its claims are not preempted because the Estate is not seeking a remedy compelling DHL to award the specific benefits under the Policy or a determination that Hartford improperly denied coverage. Thus, according to the Estate, the Estate's claims require only a "cursory examination of ERISA plan provisions" to ascertain the damages from the loss of benefits, which is insufficient to fall within ERISA's preemptive scope. [31] at 7 (citing *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002)). But the Estate's concession that "the denial of benefits under the ERISA plan forms the measure of [the Estate's] damages" is yet another factor pointing towards preemption.[2] [31] at 3. Although "[i]t is true that [the Estate is] not seeking to enlarge coverage . . . any money [it] obtained from this suit would be functionally a benefit to which the written terms of the[] plan do not entitle [it]. This type of end run is regularly rebuffed." *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992). The fact that the Estate is "seeking damages caused by a deceptive or unfair act" regarding DHL's

---

[2] *See also* [1-2] ¶ 15 ("Plaintiff was damaged in the amount of the Benefit" under the Policy); *id.* ¶ 18 (seeking damages for unpaid "benefits to which [Clarke] was entitled under the Policy, plus interest" and for being "deprived of the use of the monies due and owing to [Clarke] under the benefits of the Policy, plus interest"); *id.* ¶ 28 (same); *id.* ¶¶ 33, 37–39 (similar); *id.*, Prayer for Relief ¶ F (requesting "damages including but not limited to the loss of benefits to which Tracie Clarke was entitled under the Policy").

4

alleged misrepresentation about the Policy's coverage (that Tracie Clarke would be covered if she was terminated) and not technically asking for coverage under the Policy "is a distinction without a difference because both claims require the existence of a plan and seek a benefit not owed by the [Policy] pursuant to state law claims rather than those available under" ERISA. *Weeks v. UMR, Inc.*, 370 F. Supp. 3d 943, 951 (C.D. Ill. 2018); *see also Agranoff v. LensCrafters, Inc.*, No. 07-cv-4933, 2007 WL 4557080, at *2 (N.D. Ill. Dec. 21, 2007) (state law claim preempted because "Agranoff's alleged injury is parallel to harm to the plan itself, and necessarily implicates the benefits plan").

*Thurman v. Pfizer, Inc.*, 484 F.3d 855 (6th Cir. 2007), relied upon by the Estate, is on point. There, the plaintiff sued his employer claiming that the employer had fraudulently induced the plaintiff to leave his old job by promising him significantly greater pension benefits than what the plaintiff ultimately received. *Id.* at 858. The Sixth Circuit held that the plaintiff's claims were "clearly preempted" to the extent they sought damages based on "the difference between the benefits promised and the benefits to which he was entitled." *Id.* at 862. Thus, the plaintiff could only seek damages that were unrelated to the ERISA plan, such as "decreased wages, moving expenses, and forfeited stock options." *Id.*

The doctrine of complete preemption under § 502, 29 U.S.C. § 1132, also supports the conclusion that the Estate's state law claims are preempted, because the Estate's claims act as alternative enforcement methods to ERISA. *Halperin*, 7 F.4th at 545 (complete preemption test "is useful in assessing the similar question of alternative remedies under conflict preemption"). "[A] state-law claim is completely preempted (1) 'if an individual, at some point in time, could have brought his claim under' ERISA's expansive civil enforcement mechanism . . . and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

For the first prong, the Estate could have brought its state law claims under § 510 of ERISA. 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . ."). Section 510 "may be enforced through civil actions brought pursuant to § 502." *Kross v. W. Elec. Co.*, 701 F.2d 1238, 1243 (7th Cir. 1983). Indeed, the Seventh Circuit has held both that a claim based on an employer's allegedly wrongful termination of an employee to prevent that employee from receiving benefits is a viable claim under § 510, *id.*, and that such claims are therefore preempted. *Kariotis*, 131 F.3d at 679; *cf. Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 826 (7th Cir. 2014) (claim against former employer and others for alleged conspiracy to interfere with employees' benefits would be preempted "if . . . premised on state law").

5

For the second prong, the Estate's complaint does not allege conduct by DHL that implicates an independent legal duty outside of the Policy. As presently alleged, the Estate can only prove DHL's liability by applying the terms of the Policy to show that DHL's termination of Clarke was unnecessary for her to receive benefits under the Policy, that Clarke's termination resulted in her ineligibility for benefits, and the amount of damages. Thus, the Estate's claims are "not entirely independent of ERISA." *Studer*, 867 F.3d at 726–27 (internal quotation marks omitted). The Estate contends that its claims are based on independent legal duties arising under Illinois law that have general applicability and make no reference to ERISA plans, but courts have regularly dismissed the same types of claims as preempted where such claims relied on interpretation and application of an ERISA plan. *See, e.g.*, *Di Joseph v. Std. Ins. Co.*, 776 F. App'x 343, 347–48 (7th Cir. 2019) (affirming district court's dismissal of unjust enrichment and fraud claims); *Anderson v. Humana*, 24 F.3d 889, 891–92 (7th Cir. 1994) (affirming dismissal of ICFA and fraud claims); *Lamkins v. Dress Barn, Inc.*, No. 14-cv-8118, 2015 WL 3407372, at *4 (N.D. Ill. May 27, 2015) (collecting cases holding that fraud and ICFA claims are preempted).

Finally, the Estate argues that its unjust enrichment claim should not be dismissed because doing so would leave the Estate without a remedy. As discussed above, however, the Estate may have been able to bring a claim against DHL under ERISA § 510.[3] Regardless, the Estate's argument is foreclosed by Seventh Circuit precedent. *See Pohl*, 956 F.2d at 129 (affirming dismissal of state law claims where plaintiffs "ha[d] no claim, period" due to preemption); *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989) (affirming dismissal of preempted state law claims even though it left the plaintiff "without a remedy"). Accordingly, the Estate's claims are preempted.

## II.   Exhaustion of Administrative Remedies

DHL next argues that the Estate's claims should be dismissed with prejudice because the Estate failed to exhaust administrative remedies and any administrative appeals are now time-barred. *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011) ("[W]e have interpreted ERISA as requiring exhaustion of administrative remedies as a prerequisite to bringing suit under the statute."). Neither party, however, explains why exhaustion under ERISA is relevant given that the complaint does not include any ERISA claims. The answer presumably is that the court's finding of complete preemption means that the Estate's claims can be converted to ERISA claims for which failure to exhaust administrative remedies would be a defense. *See Davila*, 542 U.S. at 209 ("[T]he ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law

---

[3] The court does not address whether the complaint adequately states a claim for violation of § 510.

6

complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." (internal quotation marks omitted)).

The Estate, however, has not asked the court to treat any of its claims as ERISA claims. Further, the parties have focused on whether the Estate needed to exhaust its claim regarding Hartford's "denial of benefits." [23] at 9–10; [31] at 11. Yet the Estate argues that it is "not seeking or appealing any denial of benefits from Hartford's ERISA plan." [31] at 4. The Seventh Circuit has required exhaustion of administrative remedies even in the context of wrongful discharge claims brought under ERISA that are similar to the Estate's, *see Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649–50 (7th Cir. 1996); *Kross*, 701 F.2d at 1244–45, but the parties have not addressed the administrative procedures available to the Estate in this context or whether it is too late for the Estate to pursue them.

In light of these circumstances, where the complaint does not expressly plead any ERISA claims, the Estate has not asked the court to treat any of its claims as such, the Estate has disclaimed that it is challenging Hartford's denial of benefits, and the parties have not addressed whether the Estate exhausted any § 510 claims the Estate may have, the Court exercises its discretion and declines to address this issue now. DHL is free to raise this issue again if it is presented.

### III. Wrongful Termination

Finally, DHL asserts that the complaint does not state a claim for wrongful termination under Illinois law because the complaint does not allege Clarke's termination violated Illinois public policy.[4] *See Price v. Carmack Datsun, Inc.*, 109 Ill. 2d 65, 67 (1985) ("A cause of action for retaliatory discharge is recognized . . . only when the employee's discharge is in violation of a clearly mandated public policy." (internal quotation marks omitted)). In response, the Estate argues that Clarke's discharge violated two Illinois public policies: (1) the encouragement of "employers to provide health insurance plans for their employees," and (2) Article I, § 12 of the Illinois Constitution, which states that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs." [31] at 12–14.

Neither argument is persuasive. The Estate acknowledges that the alleged public policy of encouraging employers to provide health insurance is taken from the dissent in *Price v. Carmack Datsun, Inc.*—meaning it was necessarily rejected by the majority and thus is not an Illinois public policy. 109 Ill. 2d at 69 (majority opinion) ("[T]he discharge of an employee for filing a claim under a policy in which he is a beneficiary does not violate a clearly mandated public policy."). The Estate's second argument is also inconsistent with the *Price* majority's holding. Further, the

---

[4] Although the court has already held that this claim is preempted by ERISA, the court will address this argument for the benefit of the Estate should the Estate decide to amend the complaint.

7

Illinois Supreme Court has made clear that Article I, § 12 is "aspirational." *Illinois v. Averett*, 237 Ill. 2d 1, 22 (2010). The complaint thus fails to state a claim for wrongful termination under Illinois law.

## CONCLUSION

The motion to dismiss is granted, the complaint is dismissed without prejudice, and the Estate is granted leave to file an amended complaint by October 26, 2021.

Dated: September 23, 2021          <u>/s/ Martha M. Pacold</u>